```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
                  FORT WORTH DIVISION
```

DONALD HAYNES,                     §
                                   §
        Petitioner,                §
                                   §
v.                                 §    Civil Action No. 4:14-CV-923-Y
                                   §
WILLIAM STEPHENS, Director,        §
Texas Department of Criminal       §
Justice, Correctional              §
Institutions Division,             §
                                   §
        Respondent.                §

## OPINION AND ORDER

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Donald Haynes, a state prisoner, against William Stephens, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent.

After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

### I. FACTUAL AND PROCEDURAL HISTORY

In November 2012 Petitioner was indicted in the 213th Judicial District Court, Tarrant County, Texas, Case No. 1299959D, for robbery by threats. (Adm. R., WR-82,165-01 Writ, 79, ECF No. 9-3.) The indictment also included a habitual-offender paragraph alleging two prior felony convictions for the same offense. On May 20, 2013, pursuant to a plea agreement, Petitioner waived his rights,

including the right to appeal, and pleaded guilty to the offense, the state waived the enhancement paragraph, and the trial court sentenced him to twenty years' confinement. (*Id.* at 81-88.) Petitioner filed a late notice of appeal, which was dismissed by the state appellate court for want of jurisdiction. (*Id.* at 93-94.) Petitioner then filed a state habeas application challenging his conviction and raising the claims presented here, which was denied on the findings of the trial court without written order by the Texas Court of Criminal Appeals. (*Id.* at 2-20 & ECF No. 9-2.) This federal habeas petition followed.

## II. ISSUES

Petitioner raises the following grounds for habeas relief:

(1) his guilty plea was involuntarily made because he was coerced to plead guilty;

(2) he was incompetent at the time of the alleged offense;

(3) his conviction is void because there is no proof that property was taken by assault or by putting the store clerk in fear of her life or bodily injury;

(4) his trial counsel was ineffective because he "went along with [the] state to agree that" Petitioner committed the alleged crime when there was no proof that an injury occurred during the theft or that the store clerk was put in fear of her life or bodily injury; and

(5) his trial counsel failed to inform him of the right to appeal.

(Pet. 6-7, ECF No. 1.)

2

### III. RULE 5 STATEMENT

Respondent does not believe that the petition is barred by successiveness, the statute of limitations, or a failure to exhaust state-court remedies. (Resp't's Answer 4, ECF No. 17.)

### IV. DISCUSSION

#### A. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). *See* 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the

3

burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written opinion, as in this case, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and infer fact findings consistent with the state court's disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[1]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir.2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). With these principles in mind, the Court addresses Petitioner's claims.

**B. Voluntariness of the Plea**

A guilty plea is knowing, voluntary and intelligent if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). Thus, before a trial court may accept a guilty plea, the court must ensure that the defendant is competent and

---

[1] The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

advised of the consequences of his plea and the various constitutional rights that he is waiving by entering such a plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). If a challenged guilty plea is knowing, voluntary and intelligent, it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). When reviewing a record, a court must give a signed, unambiguous plea agreement great evidentiary weight. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). Additionally, although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979). A defendant's solemn declarations in open court are presumed true, and a defendant generally may not recant sworn testimony made at a plea proceeding. *United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985).

In the state habeas proceedings, trial counsel, Kimberly Minick, responded to Petitioner's claims by affidavit as follows (references to Petitioner as Appellant and all grammatical, spelling, and other errors are in the original):

I.

**Ground One: Effective Assistance of Counsel**

**Ground Two: Involuntary Plea of Guilty**

> Appellant alleges that his guilty plea was not voluntarily entered. Appellant also claims that he received ineffective assistance of counsel. These

5

allegations will be addressed jointly as they are intertwined as it relates to my legal assistance to the Appellant. Counsel for Appellant was appointed to represent Appellant and reviewed all documents, statements and photographs provided to counsel under the Tarrant County "open file policy" in effect at the time.

Appellant was charged with Robbery and the indictment contained a habitual count alleging that Appellant had been previously convicted of Robbery by Threats in Tarrant County in 1999 and of Robbery by Threats in 1991, also in Tarrant County, for which he received 20 year sentences on each. Further investigation into the Appellant's criminal history showed that he had been convicted of multiple felonies and thefts including four prior convictions for Robbery and an Aggravated Robbery that was a plea in bar. As such, the range of punishment was 25 to LIFE and up to a $10,000 fine. In addition, to those priors alleged in the indictment and two other robbery convictions, the Appellant had additional convictions for Burglary of a Vehicle (a felony at the time), a felony level theft, a misdemeanor theft and an Unauthorized Use of a Motor Vehicle, all of which would have been available to the State to use in the punishment phase of a trial should the Appellant be found guilty.

I reviewed the case reports, the crime scene photos and the statements made by the victim, witnesses and the Appellant. In that review, I learned that the victim alleged that the Appellant, whom she recognized from the neighborhood as shopping at the store on a regular basis, entered the Quik-n-Save on October 9, 2012 where he selected a 12 pack of beer and then went to the counter. The Appellant then put his hand in his waistband motioning like he had a gun and demanded money from the clerk. The victim also alleged that the Appellant threatened to kill her if she did not comply. The victim felt that her life was in danger and began to comply when two people entered the store and saw the transaction taking place. This scared off the Appellant and he grabbed the beer and fled the store. The police responded and during their investigation located a housemate of the Appellant's that led them to where he lived and they found Appellant there along with the 12 pack of beer stashed in a trash receptacle on the side of the house.

When I first met with the Appellant, I asked him to

6

tell me if he knew what he had been arrested for and why. He related to me the sequence of events saying that he knew it was wrong but he was off "his medications" at the time and therefore he didn't feel like he was guilty. He informed me that he had been getting Haldol shots in the jail and this was verified. He then related to me that he had mental health issues and had been to the State Hospital on several occasions. I asked him if he understood who I was and what my job and purpose was and he answered correctly. I questioned him further about the facts of the offense that day and he was able to relate them to me without much difficulty. I informed him that he was charged with a second degree felony of robbery and they were attempting to enhance his punishment range as a habitual offender with two prior Robbery convictions. The Appellant questioned me about whether his charge included the use of a gun and I informed him that he was not charged with using a gun but it was alleged that he made threats as that he had a gun and would use it and this is what elevated the charge to a robbery. I explained to him that no actual injury was required to be proven. I explained the threats of harm alone would satisfy the elements of the charge in addition to the fact that the complainant said she was placed in fear due to his motioning as though he had a gun and threatening to use it.

    I informed the Appellant that there were a number of things that weighed heavily against him as evidence. The first being that the complainant knew and recognized him, as he had been into the store daily over the past month and she would be able to identify him at trial as she did on the day of the offense. Also that she alleged that he threatened to kill her and that she felt she was in imminent danger of bodily injury or death. He seemed to think she was not actually afraid of him or his threats. I explained to him that the victim did say that she was placed in fear due to his threats or his actions suggesting he had a gun. I also discussed with him the statements he made to the police that could also be used as evidence against him. He admitted to the Detective, that while he didn't use the term "robbery", he did put his hand in his waistband to make it look like he had a gun and told the clerk to give him some money. He also admitted that when a customer came into the store, it scared him and he grabbed the beer and ran out.

    In addition to the complainant's ability to identify

7

him, there were two additional witnesses that entered the store during the alleged robbery and witnessed the events. One witness reported to the police that they observed the Appellant with his hand in his waistband demanding money, thereby corroborating the complainant's story. The second witness reported that when the Appellant realized that there were others in the store, he grabbed the 12 pack of beer and ran out of the store. The clerk told that witness that the Appellant had not paid for the beer and had threatened her with a gun demanding money. These statements would likely have been admitted as excited utterances and/or present sense impressions under Texas Rules of Evidence Rule 803 as hearsay exceptions, which tended to corroborate the complainant's allegations. I also informed the Appellant that the fact that he ran out of the store once he realized others were present witnessing the events could be considered evidence that he knew the illegal nature of his actions. He did say he knew it was wrong but that he "didn't have any money."

Based on the statements by the Appellant to me about his mental health history, I filed a Motion to have the Appellant examined for Sanity. There was nothing to indicate to me that he was incompetent at the time as he understood who I was, what my job was, he understood the trial procedure, the range of available punishment, and was able to relate to me relatively clearly the events of the day, although he was somewhat disjointed when it came time to relate what happened after he fled the store. He was also a very descriptive historian of his mental health and the times he was hospitalized. We were able to communicate effectively and he seemed to understand everything I said or questioned him about. He asked relevant questions and seemed to understand the explanations.

The Court did issue an order to have Dr. Emily Fallis, Ph.D. exam the Appellant to determine his sanity at the time of the offense. I received a copy of her report and reviewed the report in its entirety. In my opinion, having practiced criminal defense for 21 years at the time, there were some things that could have been presented as mitigating however, I felt that they were outweighed by the Appellant's criminal history and the diagnosis that his mental illness was self-induced due to a long history of abuse of inhalants and other illegal drugs. According to Dr. Fallis' psychological assessment,

8

she found that while the Appellant did suffer from a mental illness, he was not suffering to the extent that he was unable to appreciate the wrongfulness of his behavior. She based this on her interview and his statements that he knew taking the beer without paying for it was illegal and the facts that he left the store when witnesses entered and he hid the beer so that it would not be found "seemed to corroborate that his behavior was wrong." Dr. Fallis also questioned the Appellant about whether he would have taken the beer if a police officer had been nearby and he said "probably not" and that he would have gotten "scared off" if a police officer had been in the store when he entered to take the beer.

Prior to Dr. Fallis' psychological examination of Appellant, the State of Texas initially made a plea bargain offer of 35 years in T.D.C. I relayed this offer to the Appellant but told him I would need more time to work on the case and to get the report from Dr. Fallis. I also spoke to the Appellant's mother, Mrs. Livingston, on several occasions about the Appellant and his current and past legal troubles as well as his mental health history. She was mainly concerned with the fact that she was "sick" and needed him to take care of her as well as not wanting for him to have to serve another lengthy prison sentence.

Later negotiations with the prosecutor produced a plea bargain offer of 25 years and then eventually an agreement to waive the habitual count and recommend 20 years. The State would not go any lower as that was the sentence he had received on his previous robberies and felt, given that he was a habitual offender of the same type of offenses and had been deemed sane at the time of the offense that was as low as they intended to negotiate.

I relayed the offer to the Appellant and explained this to him. I told him that it was his decision and I was there to advise him of the evidence against him, any possible defenses and the risks of taking the case to trial in front of a jury. I informed him that I would be happy to take his case to trial but felt that his chance of being found guilty given the number of witnesses and his own statements to the police was very high. I explained that should he be found guilty and the State proved that he had been previously convicted of the 2

prior Robberies, the minimum punishment he could receive was 25 years. I then explained once again that should a jury hear evidence of the other 2 convictions for Robbery, evidence of an Aggravated Robbery along with the host of other felony and misdemeanor convictions, a Tarrant County jury could very well sentence him to life in prison. I explained that while I could not adequately predict how much time he would have to serve, the chances to be paroled and have life left to live outside of custody were considerably greater than if he received a life sentence. I also explained to him that should he want to testify, the prosecutor could use his prior convictions to impeach him and then the jury would have full knowledge of his past. As such, I explained that it would not be to his advantage to testify.

On May 20, 2013, we discussed his options again along with the various evidence and risks of taking the case to trial. I explained to him that the State was agreeing to waive the habitual count and offer him 20 years or we could take the case to trial. I informed him of Dr. Fallis' opinion that he while he was suffering from a mental illness, it was her opinion that he was competent to stand trial and that he was not legally insane at the time of the offense. At that time, the Appellant agreed to plead guilty and accept the State's plea bargain offer. I went over the written plea admonishments at length explaining each of his rights and the waiver of those rights. I explained to him that our agreement with the State was not binding on the Court and the Court could sentence him to anything within the range of punishment.

I also explained that should the Court follow the plea bargain agreement, then he would be waiving his right to appeal and would have to have the court's permission to do so. I asked him if he was satisfied with my representation and asked him, as I do every client in reviewing the waiver of their rights, if there is anything else that he would like for me to do that I hadn't done and he indicated there was not and that he was satisfied with my representation. He did express concern for his elderly mother and I told him that I would call his mother and let her know the outcome. He seemed satisfied and we followed through with his plea of guilty. The court went over the Appellant's rights and accepted the Appellant's plea of guilty and followed the plea bargain agreement sentencing the Appellant to 20

years.

> Based on the foregoing, I believe I effectively represented the Appellant, investigated the facts of the case, his possible mental health issues and how they would affect his case and his ability to understand and make an informed, intelligent, free and voluntary decision to plead guilty to the charges. After informing him of his rights and the evidence against him along with the attendant risks of taking the case to trial, I negotiated a plea at his request and was able to convince the State to waive the habitual count and offer 20 years despite the fact that he had been previously convicted of the same type of offense four separate times as well as a number of other prior charges and convictions. He understood all of the waivers of his rights and he never indicated his desire to appeal anything at any time. At the time we did the plea, the Appellant seemed to understand as he had no questions, requests or complaints regarding the outcome or the consequences.

(Admin. R., WR-82,165-01 Writ, 47-54, ECF No. 9-3.)

Based on the documentary record and counsel's affidavit, the state habeas court, by adopting the state's proposed findings of fact and conclusions of law, found that Petitioner made the decision to accept the state's plea-bargain offer and understood the consequences of accepting the plea offer; that Petitioner was fully admonished regarding the waiver of his rights, including his right to appeal; that Petitioner signed an instrument reciting that he had read and understood the written plea admonishments and the consequences of his guilty plea, that his plea was freely, knowingly, and voluntarily entered, and that he was satisfied with counsel's representation; and that Petitioner was not insane at the time he committed the offense. (*Id.* at 62-65.) The court further found that counsel reasonably investigated Petitioner's sanity at

the time of the robbery; that counsel did not coerce Petitioner into pleading guilty; that counsel provided no misinformation to Petitioner; that counsel provided Petitioner with adequate representation; and that Petitioner received effective assistance of counsel. (*Id.* at 65.)

Based on its findings, and applying the familiar *Strickland* attorney-performance standard, the state court concluded that counsel provided adequate representation and that Petitioner's plea was freely and voluntarily entered and based on proper advice of counsel. (*Id.* at 65-67.) The court further concluded that Petitioner had not shown that he would have rationally proceeded to trial or a reasonable probability that but for counsel's acts or omissions, the result of his prosecution and sentencing would have been different. Consequently, the Texas Court of Criminal Appeals denied Petitioner's claims on the trial court's findings.

Petitioner has not demonstrated that the state courts' determination of these issues is contrary to, or an unreasonable, application of Supreme Court precedent or that the state courts' factual findings are unreasonable in light of the record before the state courts. Therefore, absent clear and convincing evidence in rebuttal, this Court must defer to the state courts' factual determinations. Applying the appropriate deference, Petitioner's claim of coercion, after the fact, is insufficient to rebut the presumption that he received effective assistance of counsel and the

presumption of regularity of the state-court records. *See Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state-court records "are entitled to a presumption of regularity"); *Babb v. Johnson*, 61 F. Supp. 2d 604, 607 (S.D. Tex. 1999) (same). Further, by entering a knowing, intelligent and voluntary guilty plea, Petitioner waived all nonjurisdictional defects in the proceedings preceding the plea. *Smith v. Estelle,* 711 F.2d 677, 682 (1983). This includes claims of no evidence or insufficient evidence in support of his conviction. *United States v. Broce*, 488 U.S. 563, 569 (1989). Under federal constitutional law, a voluntary and knowing guilty plea is sufficient evidence, standing alone, to support a conviction. *Smith v. McCotter,* 786 F.2d 697, 702 (5th Cir. 1986).

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and DENIES a certificate of appealability.

SIGNED March 21, 2016.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE